UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
COUNTY OF ROCKLAND, and EDWIN J. DAY, in his
official capacity as County Executive,

|  |  |
|---|---|
|  | Docket No. _____ |
| **Plaintiffs,** |  |
| - against – | **COMPLAINT** |

TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY
and      METROPOLITAN      TRANSPORTATION
AUTHORITY,

                                    Defendants.

------------------------------------------------------------------------x

Plaintiffs COUNTY OF ROCKLAND and EDWIN J. DAY, in his official capacity as County Executive, ("Plaintiffs") as and for their Complaint in this matter against defendants TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY and METROPOLITAN TRANSPORTATION AUTHORITY ("Defendants"), allege as follows:

*SUMMARY*

1.     This is an action is brought to protect the rights and liberties of the employees and residents of the County of Rockland (the "County"), among others, from the New York Central Business District Tolling Program.

2.     Defendants intend to enact a toll for operating a motor vehicle south of 60th Street in New York County.

3.     The toll is not a valid toll because there is no rational relationship between the charge made against the driver and the service provided by the government.

4.     The toll serves only to tax drivers passing southbound across 60th Street, despite the enabling legislation not authorizing a tax as required by the New York State Constitution.

5.     The toll/tax is not legal as it treats classes of persons differently for the same activity with no rational reason in violation of the equal protection of the laws as provided for in the New York State and Federal Constitutions.

6.     Furthermore, the disparate treatment of classes of vehicle operators violates their substantive due process.

*JURISDICTION & VENUE*

7.     This action is brought under the New York and U.S. Constitutions and 42 U.S.C. § 1983. The Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(3), and 1367.

8.     Venue lies in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2).

*PARTIES*

9.      Plaintiff, COUNTY OF ROCKLAND, is a municipal corporation duly organized and existing under the laws of the State of New York.

10.     Plaintiff, EDWIN J. DAY, is the County Executive for the County, the elected representative of the residents of the County, and brings this action on behalf of the County, its employees and residents. As part of his duties, the County Executive is charge of compensating county employees for traveling-related expenses incurred.

11.     Defendant, TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY ("TBTA"), is a New York state authority conducting business in Rockland County, with offices in New York, New York.

12.     Defendant, METROPOLITAN TRANSPORTATION AUTHORITY ("MTA"), is a public benefit corporation and a New York state authority under New York state law, conducting business in Rockland County, with offices in New York, New York.

*STATEMENT OF THE CASE*

13.     In 2019, the New York State Legislature enacted New York State Vehicle and Traffic Law (NYS VTL) Article 44-c, which authorized the TBTA to toll travel in the City of New York ("City") by establishing a "central business district tolling program."

14.     The TBTA is an affiliated authority of the MTA.

15.     NYS VTL § 1701 announces that the intent of the congestion pricing is to provide capital funding for mass transit particularly the subways, to reduce vehicular congestion on the roadways, and to protect the public health.

16.     NYS VTL § 1704 defines the central business district ("CBD") is defined as the "geographic area in the borough of Manhattan south of and inclusive of sixtieth street to the extent practicable but shall not include the FDR Drive, and New York State Route 9A otherwise known as the 'West Side highway' including the Battery Park underpass and any surface roadway portion of the Hugh L. Carey Tunnel connecting to West St."

17.     At present, the Defendants' intent is to charge a toll for drivers whose motor vehicles cross the boundary of the CBD, entering into the CBD from outside the district.

18.     There is no plan to toll vehicles based on time in the congestion zone, or distance traveled within the congestion zone or by any other variable measure of contribution to congestion.

19.     The toll generates revenues by charging drivers for the use of NYC streets.

20.     The toll remains constant, as a per day charge, regardless of mileage driven or time spent on the City's roadways in the congestion zone.

21.     There is no means implemented by Defendants for to charge a toll for persons who garage their vehicles in the CBD, drive within the CBD, but do not cross out of and re-enter the CBD.

22.     The toll revenues are intended for use by the TBTA and MTA for mass transit capital projects.

23.     The TBTA and MTA will use the revenue of the tolling scheme primarily for public transit systems within the City, with small percentages to be allocated for Metro-North and other programs that are unlikely to serve Rockland County in any substantive manner.

24.     The MTA has announced that revenue from Congestion Pricing will be used to improve transit.  80% of the money will be used to modernize subways and buses; 10% will go to Long Island Rail Road, and 10% to Metro-North Railroad. Congestion pricing will make transit faster, more accessible, and more reliable for everyone.

25.     Neither the MTA nor the TBTA has announced any substantial service upgrades that would benefit residents of Rockland County.

26.     The claim that there will be less congestion affecting Rockland County residents who enter the CBD is without basis in fact.

27.     No part of the toll funds is to be used for the maintenance or upkeep of the City roadways whose use is being tolled.

28.     Pursuant to NYS Public Authorities Law § 553(12-a), "all tolls, fees and other revenues derived from the central business district tolling program shall be applied to the payment of operating, administration, and other necessary expenses of the authority properly allocable to such program, including the capital costs of such program,

and to the payment of interest or principal of bonds, notes or other obligations of the authority or the metropolitan transportation authority issued for transit and commuter projects . . .”

29.     The purpose or effect of the congestion pricing is to penalize drivers for entering into the congestion pricing zone, to deter them from driving into the CBD.

30.     It is the intent of congestion pricing to force persons who would otherwise drive into the midtown and lower Manhattan to take mass transit into that area.

31.     Presently, the primary mass transit option in the City, the subway, is so dangerous that the Governor has sent the National Guard into the subway system to provide security.

32.     As a part of the security provided, the police and National Guard are requiring mandatory searches of private citizens' bags for the "privilege" of use of the subway, a "privilege" that the Defendants are presently trying to force on the people of Rockland County by penalizing other means of entry into and transportation within the City by means of congestion pricing.

33.     Rockland County residents do not have a reasonable mass transit alternative for entry into Midtown and lower Manhattan.

34.     Rockland County is deemed a 'transit desert' by County officials describing the lack of mass transit transportation options into the City.

35.     The MTA provides only limited mass transit services to persons in Rockland County, frequently resulting in two or more hour waits for service, on the limited number of days that such service is available, and when service is available slow or lengthy transit routes making the use of mass transit impractical for many, particularly those not on regular business day schedules.

36.     The MTA provides regular and extensive, rapid service by train between Midtown and lower Manhattan and other similarly situated counties in New York and Connecticut.

37.     Rockland County is a part of the Metropolitan Commuter Mobility Tax (MCMT) region, in which employers and self-employed persons are heavily taxed to contribute to mass transit.

38.     Yet, unlike areas to the east of the Hudson River, there is no one-seat train ride to Midtown and lower Manhattan from Rockland County.

39.     Moreover, the MTA provides no MCMT tax relief to the County resulting in a $44 million per year tax to the deficit of Rockland residents who are heavily taxed for the benefit of the MTA, which organization provides little service to the County and its residents.

40.     There is no reason to believe that the residents of Rockland County will see any improvements to mass transit services provided by the MTA after paying the congestion pricing, thus raising the deficit even higher.

41.     The congestion pricing toll is a fee upon persons who cross into the CBD.

42.     The congestion pricing toll provides no benefit from the MTA or TBTA to the persons against whom the toll is imposed, or the class of persons against whom it is imposed.

43.     The congestion pricing toll does not compensate the Defendants for costs or expenses of services rendered by the City, where the use of City public roads is the basis for the charge.

44.     The revenues of the congestion pricing plan are to be used for general improvements for the use of the public at large.

*FIRST CAUSE OF ACTION*

45.     The congestion pricing toll is not legal.

46.     The congestion pricing toll does not apply fairly and equally to all persons availing themselves of the public roadways in the CBD of Manhattan.

47.     People who garage their vehicles outside the CBD, and thus, whose trips originate outside the CBD, will by necessity be required to pay a toll to enter the CBD.

48.     The same toll is to be charged regardless of the distance traveled or the amount of time spent traveling within the CBD.

49.     To the contrary, those who garage their vehicles inside the CBD, and thus, whose trips originate inside the CBD, will be free to drive about the CBD without the necessity of paying any toll no matter how far that vehicle may drive while in the CBD.

50.     The tolling plan is intended to be a penalty to divert drivers to public transportation.

51.     The class of persons to be tolled is the population of vehicle owners who drive vehicles in the CBD.

52.     The toll is only charged for crossing into the CBD, not for using the roadways in the CBD.

53.     Therefore, a person is charged the same toll regardless of whether that person drives a single block in the CBD or drives thousands of miles in the CBD.

54.     The tolling plan, for the reasons set forth above, does not fairly and equally target the intended class, all persons driving within the CBD, to reduce congestion.

55.     The announced ill to be cured is the reduction of congestion on CBD roadways.  Punishing residents and drivers who live out of the CBD with this toll is not reasonably related to the tolling plan where residents and drivers who live in the CBD are free to cause unlimited congestion without paying the penalizing toll.

56.     There is no rational basis for discriminating in favor of the group of people garaging vehicles in the CBD versus the group of people who garage their vehicles outside the CBD.  Charging the toll to a person whose trip originates outside the CBD

regardless of how much that person may contribute to road congestion, but having no means to charge a person whose trip originates inside the CBD, even if that trip may add substantially to congestion is a violation of the right to equal protection of the laws.

57.     Because the tolling scheme intended by the Defendants violates the Equal Protection Clause of the New York State and U.S. Constitutions, Plaintiffs request that Defendants be enjoined from enforcing the toll.

*SECOND CAUSE OF ACTION*

58.     The congestion pricing toll is, as a matter of law, an unauthorized tax.

59.     The TBTA is not statutorily authorized to charge a tax.

60.     In the absence of such State statutory authority, the TBTA may not levy a tax.

61.     As a matter of law, the toll is a tax because the toll amount is regulated by Defendants' necessities in providing services to the public—not the cost any individual places upon the government in exchange for government services.

62.     The congestion toll is in no way related to the volume and use an individual places on the roadways in the CBD.

63.     The charges to the driving public are to support the operation and capital expenditures of the entire ITN.

64.     Maintenance and improvement of the ITN in the City, which is now deemed to include the congestion on City roadways and environmental health, and thus, touches on all government services related to transportation, makes the ITN the equivalent of an operation of a general government.

65.     The Integrated Travel Network (ITN) operated, managed, maintained, and funded by the TBTA and MTA is an organism so large as to constitute a quasi-government.

66.     Like a government, the TBTA and MTA are responsible to the public to operating the ITN for the benefit of the public.

67.     Among others, the TBTA and MTA have authority to tax, borrow, police, contract, purchase and sell real and personal property, regulate traffic, construct public roads and parks, and create via regulations offenses and misdemeanors all functions of a government.

68.     The TBTA and MTA are creatures of the State government in the same manner as a village, town, city, or county.

69.     A tax is imposed by a legislature upon many, or all citizens.  It raises money, contributed to a general fund, and spent for the benefit of the entire community.

70.     The revenue of the charges is a general benefit to the public of a sort often financed by a general tax and does not provide more narrow benefits to the subjects of the toll.

71.     The charge is imposed upon many residents of the region to raise money for a general fund, as illustrated by the extremely broad powers and responsibilities of the TBTA/MTA affiliation and spent for the benefit of the entire community within the TBTA/MTA operating region.

72.     The charge also is the same regardless of how much a given person adds to congestion on any given day, and thus, it cannot be considered a toll, which must possess a fair approximation of use or privilege for use.

73.     Pursuant to the New York State Constitution, only the State Legislature may authorize a tax.

74.     No tax was authorized by the CBD-enabling legislation.

75.     The tax is not charged to similarly situated individuals, that group being all individuals driving in the CBD.

76.     No part of this tax is charged to persons who garage their vehicles in the CBD and drive only within the CBD.

77.     This is not the result in regulatory classifications created by the TBTA, it is a result in the scheme by which the TBTA and MTA have decided to implement the tax.

78.     Persons driving in the CBD are not being treated uniformly.

79.     Because the toll/tax is unauthorized and because the tolling scheme intended by the Defendants violates the Equal Protection Clause of the New York State

and U.S. Constitutions, Plaintiffs request that Defendants be enjoined from charging that toll/tax.

*THIRD CAUSE OF ACTION*

80.    Defendants must be enjoined to study a possible offset for bridge tolls paid by Rockland residents for entry into New York County.

81.    Commuters from Rockland and Orange Counties—paying members of the MTA—are furthest away from the CBD and have the least transit options with the highest transit fares.  If no crossing credit is provided for our residents who use the George Washington Bridge (GWB), they will not only be paying the highest crossing toll of any of the crossings into Manhattan ($17.63 [toll by mail price]), but also will be forced to absorb the burden of the higher base CBD toll caused by credits being proposed for the Lincoln, Holland, Queens-Midtown and Hugh Carey tunnels.

82.    A credit for the GWB crossing is not in play, the Traffic Mobility Review Board (TMRB)'s analysis process has been blatantly exclusionary of the West of Hudson suburban members of the MTA.

83.    An analysis should also be provided by the TMRB regarding in which Rockland residents (only) are provided with a CBD toll exemption or a full GWB crossing credit.

84.     Because the Defendants have failed to properly analyze the impact od the CBD Tolling Program in relation to other typical tolls and fees paid by the users of transportation infrastructure in the region, the Defendants should be enjoined to conduct the study.

*FOURTH CAUSE OF ACTION*

85.     The toll or tax to be levied by the TBTA and MTA violates the Eighth Amendment prohibition against excessive punishments.

86.     The toll or tax to be levied by the TBTA and MTA is intended to deter drivers and their vehicles from entering the CBD.

87.     Unlike tolls on bridges or highways, the primary purpose of the toll here is not to maintain the roadways in the area of the toll, but merely to deter use of roadways in the CBD for the purpose of collecting revenue to spend on general governmental projects across a region that extends 75 to 80 miles from the center of the CBD.

88.     The toll is grossly disproportionate to the activity being deterred.

89.     The nature and extent of the matters being deterred are defined by the TBTA and MTA as operating a motor vehicle for any distance in the CBD.

90.     The alleged harms caused by an individual's vehicle operating in the CBD, including slow traffic and decreased air quality, is nominal.

91.     The deterrent toll or tax is grossly disproportionate to the offense of merely legally driving in the CBD, which is exacerbated by the fact that in a case where the driving is minimal or accidental, the disproportionate deterrent toll is still charged in full.

92.     Because the CBD toll constitutes an excessive fine in violation of the Eighth Amendment, the Defendants should be enjoined from implementing the toll.

*PRAYER FOR RELIEF*

WHEREFORE, Plaintiffs hereby requests Judgment:

a.  As to the First Cause of Action, enjoining the Defendants from enforcing the New York Central Business District Tolling Program;

b.  As to the First Cause of Action, enjoining the Defendants from charging the toll;

c.  As to the Third Cause of Action, enjoining the Defendants to conduct a study analyzing analyze the impact od the CBD Tolling Program in relation to other typical tolls and fees paid by the users of transportation infrastructure in the region;

d.  As to the Fourth Cause of Action, enjoining the Defendants from implementing the toll;

e.  Awarding Plaintiffs reasonable attorney's fees, costs and disbursements of this action; and

f.   Granting Plaintiffs such other and further relief as the Court deems just and

equitable.

Dated: New City, NY
       March 26, 2024

By:

Thomas E. Humbach
Office of the County Attorney
*Attorney for Plaintiffs*
11 New Hempstead Road
New City, NY 10956
845-638-5180
humbacht@co.rockland.ny.us